875 P.2d 832

**Joseph CAPITANO, Plaintiff/Appellee,**

**v.**

**STATE of Arizona, and the Arizona Department of Corrections, a political subdivision thereof, Defendant/Appellant.**

No. 2 CA–CV 93–0113.

Court of Appeals of Arizona, Division 2, Department B.

Oct. 29, 1993.

Reconsideration Denied Dec. 16, 1993.

Review Denied July 6, 1994.

Chandler, Tullar, Udall & Redhair by Dwight M. Whitley, Jr., Tucson, for plaintiff/appellee.

Gust Rosenfeld by Steven M. Guttell, Phoenix, for defendants/appellants.

## OPINION

ESPINOSA, Presiding Judge.

The State of Arizona appeals a decision in favor of appellee Joseph Capitano who, in December 1990, sued the Arizona Department of Corrections (ADOC) for handicap discrimination in violation of the Arizona Civil Rights Act (ACRA), A.R.S. § 41–1461 *et seq.*, and "the United States and Arizona constitutions and statutes."

Absent clear error, our review on appeal is bound by the trial court's findings of fact, giving due regard to its opportunity to view evidence and weigh credibility. *Lee Development Co. v. Papp*, 166 Ariz. 471, 803 P.2d 464 (App.1990). We are not bound by the trial court's conclusions of law or findings that combine both fact and law when there is an error as to the law. *Id.*

### Facts and Procedural History

In August 1989, Capitano applied for a position as a Correctional Service Officer (CSO) with ADOC. The application process involved a physical examination, including a hearing test which required normal hearing without the use of a hearing aid. Capitano tested as "below normal," with a mild to moderate high frequency hearing loss in both ears, and was not allowed to continue the application. Capitano subsequently sued, alleging handicap and age discrimination. ADOC's motion for summary judgment was granted as to the age discrimination claim. At a bench trial in September 1992, Capitano introduced evidence that he had an estimated hearing loss of 12½% at certain upper frequencies but had no problems with speech discrimination, and that the "pure tone" testing procedure utilized by ADOC was outdated. He also asserted that there were a number of CSO duties that did not require acute hearing. The state introduced ADOC technical reports and recommendations for applicant medical standards, and contended that unassisted hearing is critical to safety and efficiency in the noisy prison environment, that it is imperative that all CSO's be able to perform any of numerous CSO functions on short notice, and that there were other ADOC positions for which Capitano would not have been disqualified.

The trial court concluded that the hearing standard utilized by ADOC was not based on "any scientific studies," that the testing procedure was "antiquated" in view of the existence of a more sophisticated test, and that the standard was a mere screening device for reducing the large number of CSO applicants. Assuming successful completion of other requirements, the court ordered ADOC to hire Capitano and provide reasonable accommodations by allowing the use of a hearing aid and/or by job restructuring. The court also awarded stipulated "back pay" and "front pay," [1] attorneys' fees, interest and costs.

On appeal, the state challenges the trial court's conclusion that Capitano was disabled or handicapped for purposes of the employment discrimination laws, and its order re-

---

1. Front pay refers to future lost earnings. *Hansard v. Pepsi–Cola Bottling Co. Inc.*, 865 F.2d 1461 (5th Cir.1989).

quiring accommodation by way of job restructuring or allowing Capitano to wear hearing aids on the job. Because we find that Capitano did not meet his threshold burden of demonstrating that he was handicapped or disabled under either state or federal law, we reverse.

## Discussion

■ The Arizona Civil Rights Act prohibits employment discrimination on the basis of an individual's handicap. A handicap is defined as "physical impairment that substantially restricts or limits an individual's general ability to secure, retain or advance in employment." A.R.S. § 41–1461(4). Both the Federal Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213, now use the term "disability" instead of handicap, and define it as 1) a physical or mental impairment which "substantially limits" one or more major life activities, 2) a record of such an impairment, or 3) being regarded as having such an impairment. *See* 29 U.S.C. § 706(8)(B), formerly 29 U.S.C. § 706(7)(B), and 42 U.S.C. § 12111(8). It appears that the trial court disregarded the Arizona statute and found that Capitano had a "disability" under federal law.[2] Our review of the record and the plain language of the federal statute lead us to disagree. Because the basis of Capitano's suit was the ACRA, we also analyze this case under Arizona law and reach the same result.

■ To maintain a handicap discrimination action under the Rehabilitation Act, a plaintiff must first demonstrate that he is handicapped or disabled. *de la Torres v. Bolger,* 781 F.2d 1134 (5th Cir.1986); *Jasany v. United States Postal Service,* 755 F.2d 1244 (6th Cir.1985). Although the trial court concluded that Capitano was substantially limit-

ed in his major life activities, had a record of hearing impairment, and was regarded by ADOC as having such an impairment, it made no factual determinations in this regard. We find nothing in the record before us to support the conclusion that Capitano was substantially limited or impaired under either the Rehabilitation Act or the ACRA. On the contrary, the record and the undisputed facts on appeal compel the opposite conclusion.

As for the substantial nature of his impairment, Capitano relied solely on his failure to pass the ADOC hearing test and medical evidence that he has a high frequency hearing deficit which his doctor characterized as "unremarkable," and which the state contended was "common." Capitano does not dispute that he has never experienced any hearing problems and that he does not consider himself to suffer any impairment. His medical expert indicated that Capitano did not need, nor would he wear, a hearing aid. Indeed, Capitano apparently testified that his hearing condition has never had any effect on him whatsoever.[3] We agree with appellant that there is no evidence of substantial physical limitation within the meaning of the Rehabilitation Act. *See Jasany v. U.S. Postal Service, supra* (plaintiff not handicapped where he stipulated that his condition had never had any effect on his activities or work history). The same conclusion follows with respect to the ACRA. Capitano did not present evidence or even allege that his general employment prospects are limited in any significant way as a consequence of his hearing loss, other than by the denial of the CSO position he sought. Accordingly, he failed to show a substantial limitation within the meaning of the state statute as well.

Capitano also did not demonstrate a "record of such impairment" for purposes of the

---

2. In its conclusions of law the trial court refers to the ADA; however, that law was not in effect at the time of Capitano's application to ADOC, becoming generally operative as to public entities no earlier than January 26, 1992. *See* 26 C.F.R. § 35.140 (1992). Because the employment discrimination provisions of the applicable law at the time, the Rehabilitation Act, are essentially identical to the ADA's, we address the merits under the Rehabilitation Act. We note that state courts have concurrent jurisdiction with federal

courts to entertain Rehabilitation Act claims. *Elek v. Huntington Nat'l Bank,* 60 Ohio St.3d 135, 573 N.E.2d 1056 (1991).

3. Although both parties cite the trial transcript extensively, neither provided this court with a complete copy of it. We accept the state's factual averments since they are not disputed by appellee.

Rehabilitation Act. He presented no evidence of previous hearing problems nor any medical history in this regard. He only learned of the high frequency loss when he was tested as part of the ADOC application. We decline to adopt Capitano's theory that the mere fact that he failed the hearing test was sufficient to establish *a record* of a substantial disability for purposes of the employment discrimination statutes. *See* 29 C.F.R. § 1630.2(K) (intent of identical ADA provision is to ensure that individuals are not discriminated against because of a history of disability).

The "regarded as" basis for establishing a disability under federal law is arguably present here. Capitano alleges that he is "handicapped" within the meaning of the law "simply because ADOC treated him as having a hearing disability when it disqualified [him] from employment." A similar issue was recently addressed by Division One of this court in the context of the ACRA.[4] In *Burris v. City of Phoenix,* 179 Ariz. 35, 875 P.2d 1340 (Ct.App.1993), an applicant to the Phoenix Fire Department with a history of surgically cured cancer was rejected from employment as a fire fighter based on an across-the-board disqualification of anyone with a history of cancer. In upholding the trial court's finding of handicap discrimination, the court reasoned that remedial statutes should be liberally construed, and quoted the Washington Court of Appeals in *Barnes v. Washington Natural Gas Co.,* 22 Wash.App. 576, 579, 591 P.2d 461, 464 (1979), as follows:

It is the intent of the legislature to prohibit discrimination in employment against a person with a sensory handicap. It would be an anomalous situation if discrimination in employment would be prohibited against those who possess the handicap but would not include within the class a person "perceived" by the employer to have the handicap.

179 Ariz. at 40, 875 P.2d at 1345. We agree with this proposition. However, the *Burris* court also noted at the outset:

To be a handicap under the statute, the condition must also substantially restrict or limit an individual's general ability to secure, retain, or advance in employment. Burris introduced expert testimony at trial regarding difficulties cancer sufferers have in job hiring and promotions. The expert testified that a history of cancer affects an individual's ability to be hired, restricts his or her employability, and likely would have a lingering effect on the ability to progress with an employer. He based that opinion on his experience and research that show that employers have numerous misconceptions about cancer regarding the effect of the disease even on people who no longer have cancer. An article in evidence stated that approximately twenty-five percent of the five million people in the United States with a cancer history experienced disparate treatment in employment solely because of their medical histories. The expert testified that since at least 1977, studies on the subject have consistently found that people with cancer have significant problems in the work place, both in securing new employment and in keeping jobs they had at the time the cancer was diagnosed.

*Id.* Unlike the present case, Burris met his burden of showing that the employment limitations related to his disability, both actual and as a result of employer perception, were not insignificant.

 The Rehabilitation Act requires a similar showing. To succeed on a claim under the Act, a plaintiff must demonstrate a *substantial* limitation, whether genuine or perceived. *Welsh v. City of Tulsa, Okl.,* 977 F.2d 1415 (10th Cir.1992); *Forrisi v. Bowen,* 794 F.2d 931 (4th Cir.1986); *Jasany v. U.S. Postal Service, supra.* The statutory reference to "substantial" requires more than a mere showing that one employer regards an individual as unsuited for one position. *See Forrisi, supra.* A plaintiff must present evidence, such as expert opinion by a vocational expert, "that the plaintiff would be precluded from performing not only the specific job for

---

4. We have previously noted that the ACRA's provisions are similar in intent and purpose to those of the Rehabilitation Act. *See Matos v. City of Phoenix,* 176 Ariz. 125, 859 P.2d 748 (Ct.App. 1993).

which [he] applied, but a wide range of jobs...." *Welsh,* 977 F.2d at 1419. We do not imply that *Welsh* and *Burris* describe the exclusive evidentiary standard in this regard. The question whether a particular impairment constitutes a significant barrier, either actual or as perceived by others, is an individualized one, but one which initially must be addressed by the plaintiff under the threshold requirements of the discrimination statutes. *Forrisi, supra; see Burris, supra.*

We reject Capitano's theory that the employer's conduct in finding an employee categorically unfit for a particular job necessarily establishes the "regarded as" basis, as have several other courts that have addressed this issue. *Welsh, supra; Forrisi, supra; de la Torres v. Bolger,* 610 F.Supp. 593 (N.D.Tex. 1985), *aff'd.* 781 F.2d 1134 (5th Cir.1986); *Tudyman v. United Airlines,* 608 F.Supp. 739 (C.D.Cal.1984).

> [A]n impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act. Any other interpretation would render meaningless the requirement that the impairment *substantially* limit a *major* activity. "It was open to Congress to omit these limiting adjectives, but Congress did not do so." *Forrisi,* 794 F.2d at 934.

*Welsh,* 977 F.2d at 1419 (emphasis in original). *See Tudyman,* 608 F.Supp. at 746 ("This Court refuses to make the term handicapped a meaningless phrase."). *See also* Ariz. Att'y Gen. Op. I87–159 at 4 ("substantial" limitation requires disqualification from more than "narrow spectrum of jobs").

■ Both the Rehabilitation Act and the ACRA, and their respective underlying "findings and purposes," *see* 29 U.S.C. § 701, and Historical Notes, A.R.S. § 41–1490 *et seq.* (Supp.1992), suggest that neither federal nor state legislators intended to extend the protection of these laws to persons not significantly restricted in their general ability to secure employment or in their major life activities. We agree with the state that the laws seek to insure that the truly disabled, but generally capable, will not face discrimination in employment because of stereotypes or prejudice concerning their handicaps. As the *Forrisi* court stated:

> It would debase this high purpose if the statutory protections available to those truly handicapped could be claimed by anyone whose disability was minor and whose relative severity of impairment was widely shared. Indeed, the very concept of an impairment implies a characteristic that is not commonplace and that poses for the particular individual a more general disadvantage in his or her search for satisfactory employment. [citation omitted.]

794 F.2d at 934 (employee with acrophobia not a "handicapped individual" under Rehabilitation Act). *See also Welsh, supra* (fire department applicant with decreased sensation in two fingers did not establish a handicap); *Maulding v. Sullivan,* 961 F.2d 694 (8th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1255, 122 L.Ed.2d 653 (1993) (sensitivity to chemicals and asthmatic condition which precluded employment as a pharmacologist not a handicap); *Jasany v. U.S. Postal Service, supra* (plaintiff with mild case of crossed eyes resulting in job-related eyestrain not handicapped); *Elstner v. Southwestern Bell Telephone Co.,* 659 F.Supp. 1328 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir. 1988) (knee problem precluding pole climbing job requirement was impairment but not one substantially limiting major life activity); *Hollinrake v. Iowa Law Enforcement Academy,* 452 N.W.2d 598 (Iowa 1990) (failure to meet academy's vision standards not a handicap); *Cooper v. Hennepin County,* 441 N.W.2d 106 (Minn.1989) (high tone hearing loss in one ear and uncorrected vision of 20/100 in both eyes not a handicap).

It is undisputed that Capitano was disqualified from the application process because he failed to meet a physical job requirement; his complaint therefore stated a cause of action based on handicap discrimination. *See Jurgella v. Danielson,* 158 Ariz. 542, 764 P.2d 27 (App.1988). However, Capitano did not come forward with any evidence from which the trial court could determine that his admittedly minor hearing deficit constituted a substantial limitation on his general ability to secure, retain or advance in employment under the ACRA, or a substantial impairment

of any major life activity for purposes of the Rehabilitation Act. Absent such evidence, Capitano failed to establish that he was disabled or handicapped within the meaning of either statute. To hold otherwise would effectively rewrite the law to dispense with the requirement that the plaintiff's limitation be a "substantial" one.

We do not decide that a high frequency hearing loss can never be a handicap under the law. It simply was not shown to be one here. Having so concluded, it is unnecessary to address the remaining arguments advanced by the state.

Reversed.

DRUKE, C.J., and HATHAWAY, J., concur.